UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

**ROBERT GRILLS,**

    **Plaintiff,**

**v.**                                                   **Case No. 2:06-CV-313-FtM-29DNF**

**MICHAEL J. ASTRUE[1],**

    **Defendant.**

_____/

## **REPORT AND RECOMMENDATION**

### **TO THE UNITED STATES DISTRICT COURT**

This matter is before the Court on the plaintiff's complaint (Doc. #1), seeking review of the final decision of the Commissioner of Social Security of the Social Security Administration ("the Commissioner") denying his claim for social security disability and disability insurance benefits (DIB)  and Supplemental Security Income (SSI) pursuant to 42 U.S.C. §405(g) and 42 U.S.C. 1383(c)(3).. The Commissioner has filed the Transcript of the proceedings (hereinafter referred to as "TR." followed by the appropriate page number), and the parties have filed legal memorandums. For  the reasons set out herein, it is **RESPECTFULLY RECOMMENDED**  that the decision be **REMANDED**.

---

[1] Michael J. Astrue became the Commissioner of Social Security on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should, therefore, be substituted for Acting Commissioner Linda S. McMahon as the defendant in this suit.  No further action need to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

I. **SOCIAL SECURITY ACT ELIGIBILITY, THE ALJ DECISION AND STANDARD OF REVIEW**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § § 416(i), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § § 404.1505-404.1511. The plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

On October 23, 2003, plaintiff filed applications for disability, disability insurance benefits and Supplemental Security Income. [Tr. 62, 80]. The Plaintiff alleges an onset of disability commencing November 20, 2001. [Tr. 62]. The Plaintiff timely requested a hearing before an administrative law judge (ALJ). The claim was denied upon application and reconsideration and on June 28, 2005, a hearing was held before Administrative Law Judge (ALJ) Delores McNerney. [334-72]. The ALJ's decision dated October 21, 2005, denied plaintiff's claim for disability benefits.[2] [Tr. 19-29]. The Appeals Council denied Plaintiff's request for review. [Tr. 4-6]. The

---

2   In her decision, the ALJ dismissed the Title II claim for a period of disability and Disability Insurance Benefits in accordance with an agreement reached between counsel for the plaintiff at the hearing. The plaintiff's date last insured for Title II benefits only covered the period of time up and through March 31, 1993. There was insufficient evidence to relate to the 1993 date. [Tr. 20, 364]. Therefore, the remainder of the decision is for Title XVI Supplemental Security Income payments, based on the application filed November 3, 2003.

ALJ's hearing decision dated October 21, 2005 [Tr. 16-29] is now ripe for review under 42 U.S.C. §§ 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c)(3).

The ALJ's Decision, issued October 21, 2005, found the plaintiff not eligible for Supplemental Security Income payments based on disability, under Sections 1602 and 1614(a) (3)(A) of the Social Security Act. [Tr. 29]. At Step 1, the ALJ found the plaintiff had not engaged in substantial gainful activity since his alleged disability onset date of November 2001, and/or the protective filing date of his title XVI application, November 1, 2003.[3] [Tr. 21]. At Step 2, the ALJ found the medical evidence establishes that the Plaintiff has chronic low back pain, obesity and history of left wrist fracture. [Tr. 21].[4] At Step 3, the ALJ found these impairments are not severe enough to meet or medically equal, either singly or in combination to one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (T. 21). At Step 4, the ALJ determined that based upon the medical evidence and his determination that plaintiff's testimony regarding his limitations was not totally credible, he found that the Plaintiff has the residual functional capacity to perform light exertional work with occasional use of his left hand/wrist and is unable to perform any of his past relevant work as a plumber, apprentice electrician, and/or electrician. 20 C.F.R. §§ 404.1565, 416.965. [Tr. 28]. Accordingly, the ALJ did not consider Step 5 and found the plaintiff was not disabled. The parties agree that the case is ripe for review.

---

3 The plaintiff testified he receives some income from the Veteran's Administration (VA) based on a 10:% service-connected disability rating.

4 The claimant has also been diagnosed with a major depressive disorder, and has a history of abuse of alcohol, cannabis, and/or prescribed pain medications, but these impairments, considered singly or in combination with each other or with his physical impairments, are not considered severe or significantly work-restrictive.

**II.    REVIEW OF FACTS AND CONCLUSIONS OF LAW**

    **A.    BACKGROUND FACTS**

The Plaintiff was born on April 14, 1958, and was forty years old at time of the hearing decision. [Tr. 16-29]. The Plaintiff completed high school and two years of college. The Plaintiff earned an Associate's Degree in political science. [Tr. 337]. The Plaintiff served in the military from September 1976 through September 1979 and obtained a certificate in nuclear, chemical and biological warfare decontamination. [Tr. 337]. The Plaintiff is left hand dominant and testified that while in the infantry he injured his left wrist in a training exercise. The Plaintiff's past relevant work was as a plumber, apprentice electrician and/or electrician. [Tr. 26]. Since November 2001, the Plaintiff has worked approximately 4 months total. The Plaintiff was unable to continue to work due to back pain. [Tr. 341]. The Plaintiff alleges degenerative disk disease, arthritis of the spine, displaced disks, a broken left wrist, major depression, and problems with concentration and memory. [Tr. 80].

The Plaintiff was seen by Gilberto Acosta, M.D. of Lee Memorial Health Systems on December 13, 2002. The Plaintiff was referred to Lee Pain Service by Dr. Scott Fields for evaluation and treatment of low back pain. The Plaintiff reported pain of many years as a result of a back injury while serving in the army. The Plaintiff reported that his back pain became worse while working on a job he held in 1990. The Plaintiff advised that his medications include: "[C]lonopin, Elavil, Oxycodone, Xanax and aspirin. The Plaintiff admitted to medicating with vodka and taking Aleve, Motrin and Tylenol. The Plaintiff admitted to smoking and drinking 3-4 drinks a day." "[P]LAN:  1. We are going to send the patient for a MRI of the lumbar spine. 2. The patient will return to the pain clinic in a few weeks for further treatment which may include

a lumbar epidural steroid injection under fluoroscopic guidance.  3.  A months supply of OxyContin was given.  The patient was warned about taking narcotics while drinking alcohol.  The patient will return to the pain clinic in a few weeks for further treatment." [Tr. 109-110].  The Plaintiff returned to Dr. Acosta on January 6, 2003.  The Plaintiff's MRI was reviewed and revealed a left posterolateral disk bulging at L4-5, "[m]ore prominent posterolateral bulging disk at L-5 (unreadable) probably representing disk herniation with some encroachment of the neural foramen."  The Plaintiff was scheduled for the lumbar epidural steroid injection but advised he had eaten 45 minutes prior to his appointment.  The procedure was postponed and the Plaintiff's prescription for Oxycodone was renewed. [Tr. 111].  On January 27, 2003, the Plaintiff returned to Dr. Acosta for a lumbar epidural steroid injection.  The Plaintiff was continued with OxyContin.  On March 6, 2003, the Plaintiff returned to Dr. Acosta and received another injection.  The Plaintiff was advised his medication was being discontinued and he would be started on Baciofen, an anti-inflammatory. [Tr. 114]   The Plaintiff requested a note indicating that he was under treatment and required light duty status while his house was being built by Habitat for Humanity. [Tr. 114-115].  The Plaintiff returned to Dr. Acosta, asking that he be continued on the pain medication and not receive the injection.  However, Dr. Acosta recommended that the Plaintiff "[s]hould go and get physical therapy."  The Plaintiff advised he was doing his own physical therapy by swimming. [Tr. 116].  The Plaintiff was started on Bextra 20 milligrams p.o.q.d., and advised to return for follow-up to determine if he needed a repeat injection. [Tr. 116].

In May of 2003, the Plaintiff began seeing Dr. Keith Susko, M.D., of the Southwest Florida Rehab and Pain Management Association.  Dr. Scott G. Fields had referred him for a psychiatric consultation and treatment for his lower back pain.  The Plaintiff complained of constant pain and

pressure discomfort. [Tr. 146]. The Plaintiff related that he "smoked pot" some years ago but denied current drug use. The Plaintiff related that he had quit cigarette smoking six months prior but occasionally had a cigarette socially and had limited his alcohol intake to a few beers every one to two weeks. [Tr. 147]. The Plaintiff advised his current medications were Percocet, which he takes two at a time, up to three times per day. He takes aspirin, Tylenol, Aleve, Motrin and Zantac. He was unable to remember the antidepressant he had been prescribed. Dr. Susko's diagnostic impressions included: "[l]umbar pain, L5-S1 disk herniation, myofascial pain syndrome with latent trigger points in the upper gluteal muscles, chronic back pain syndrome, lumbar degenerative disc disease, abnormal gait and scoliosis". Dr. Susko's treatment plan included: "[ X]-rays of the spine with all views, possible bone scan, prescription for Percocet, Naproxen and follow-up in a month's time". The Plaintiff read, signed and agreed to a pain management plan for his pain and his pain medications. [Tr. 149].

On June 10, 2003, Dr. Susko noted that the Plaintiff's pain was so severe that the Percocet was unable to control it. The Plaintiff was given a comprehensive physical at the Bay Pines Veteran's Hospital in St. Petersburg. The Plaintiff complained of back pain which increased with standing and prolonged sitting, but advised he was somewhat relieved when swimming in a warm pool. The Plaintiff advised his pain was sharp and radiating into his legs. The Plaintiff complained of problems with his wrist and severe depression. [Tr. 151-152- The VA has an inpatient pain program at Bay Pines, but Plaintiff was unable to attend this program because of his need to supervise his two minor children, who have severe behavior problems. ]Tr. 358]

In August of 2003, the Plaintiff complained of pain when sitting or standing. Stress also appeared to be a factor in exacerbating his pain. On August 21, 2003, the Plaintiff had a bone scan

of his thoracolumbar spine which revealed that Plaintiff had only one kidney but otherwise was unremarkable. [Tr. 137]. The x-rays were reviewed from the VA and they showed evidence of "[m]ild disk degeneration at L5-S1". [Tr. 144].

On September 5, 2003, the Plaintiff returned to Dr. Susko for a follow-up visit. Again, the Plaintiff was noted with tenderness in the thoracic and lumbar spine. [Tr. 135]. It was noted the Plaintiff was getting relief from OxyIR. [Tr. 134-136]. During the Plaintiff's October visit, it was noted that the medication appeared to be relieving the Plaintiff's pain, but he was "[u]nable to perform any activities without the medications." [Tr. 132]. The Plaintiff seemed to find some relief when he was in the pool or laying down. Dr. Susko prescribed an "Ortho-Trac lumbar decompression vest". [Tr. 135]. Again it was noted that the Plaintiff was getting relief from OxyIR. [Tr. 134-136]. On December 24, 2003, the Plaintiff was seen for his lumbar pain. The lumbar spine showed some mild scoliotic curvature. Tenderness to palpation was found at the L-4 level. The Plaintiff advised that he was unable to continue his stretches and exercises as he had been living in his van for the past four weeks. [Tr. 126].

The Plaintiff also reported that his 14 year old son had struck him from behind and when he attempted to protect himself he broke a bone in his left hand and sprained his wrist. Dr. Susko found the hand to have a fracture of the left fourth metatarsal and wrist pain. Dr. Susko made a notation in the record: "[I] believe that the patient has been the subject of domestic abuse by his 14 year old son."

The Plaintiff denied use of any illegal substance. The Plaintiff reported taking his OxyIR up to six tablets per day, and taking Topamax, Naproxen, Effexor and Bupropion as prescribed by the VA Hospital. Dr. Susko renewed his OxyIR with no refills, the Topamax, with two refills.

The Naproxen to be refilled by the VA.  The Plaintiff was asked to provide a urine sample before leaving the office and to follow-up in one month. [Tr. 127].

### III.     SPECIFIC ISSUES

#### A.     PAIN STANDARD

The Plaintiff contends the ALJ failed to apply the proper standard for the evaluation of pain and credibility and that the ALJ's RFC determination is contrary to the medical evidence of record

The Eleventh Circuit pain standard requires (1) evidence of an underlying medical condition and either (2) objective evidence that confirms the severity of the alleged pain arising from that condition, or (3) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged pain.  Once the standard is met, the ALJ must still evaluate the intensity and persistence of the symptoms based on all of the evidence of record.  20 C.F.R. 404.1529(c). The ALJ may discredit a claimant's subjective testimony regarding pain if he articulates explicit and adequate reasons for doing so.  *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  Determining the credibility of a claimant is the duty of the Commissioner.  *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995).  "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Id*.

In the instant case, the ALJ wrote the following regarding the Plaintiff's pain,

> "[T]he claimant's objective documentation of record provides only partial support for the claimant's subjective complaints, in that it contains objective findings establishing back, left wrist, and mental impairments, but does not substantiate the degree of pain, depression, or limitation alleged by claimant." [Tr. 24].

On  January  6,  2003,  the MRI reviewed by Dr. Costa revealed a left posterolateral disk

bulging at L4-5, "more prominent posterolateral bulging disk at L-5 (unreadable) probably representing disk herniation with some encroachment of the neural foramen." [Tr. 111]. The ALJ failed to discuss Dr. Acosta's notes about the Plaintiff's pain nor his opinion that his symptoms were consistent with a lumbar radiculopathy. [Tr. 111]. Dr. Susko's notes indicated lumbar pain at L1-2 and a herniated disk at L5-S1, which were consistent with Dr. Acosta's opinion. The Plaintiff was prescribed a special back brace (an Ortho-Trac vest) to relieve the pressure on his spine.[5]

The Plaintiff testified that he is unable to do basic housework, i.e., he can't run a vacuum cleaner, can't push a lawnmower and can only do dishes once in a great while. [Tr. 340]. Again, the only relief from pain that the Plaintiff attested to was when he was swimming.

The record shows that the Plaintiff was taking numerous medications. The Plaintiff testified, "[I] had to quit taking Oxy drugs, I was stoned all the time and I was, I couldn't function I, I had to make a choice between either having more pain and having a conscious mind or being in a stupor all the time. I had to give them up." [Tr. 343]. The record shows that for a long time, the treating physicians' of the Plaintiff found his pain to be completely credible and prescribed high doses of pain medication. The Commissioner is required to consider the "type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate pain or other symptoms." 20 C.F.R. § 404.1529(c)(3)(iv). It appears that the ALJ failed to discuss important pieces of medical evidence supporting the Plaintiff's allegations of pain and the medical condition that is producing that level of pain.

---

[5] This vest was not covered by the Plaintiff's insurance and he was having difficulty adjusting it, so the Plaintiff was not able to use it.

**B.     MENTAL IMPAIRMENT**

The Plaintiff contends the ALJ erred in not finding the Plaintiff has a major depressive disorder as set forth in Listing 12.04, affective disorder; and 12.09 substance addiction disorder.

On June 5, 2003, the Plaintiff was seen by Kandee S. Grossman, Ph.D. (Psychologist) at the VA hospital on an emergency basis.  The Plaintiff advised he was stressed out because of the loss of his primary care provider in the private sector who has been treating him for depression.  The Plaintiff advised he had been unable to get a job for the past 12 years, can't provide financially for his family, has back pain daily and is having nightmares on his current antidepressant medication.  The Plaintiff also voluntarily said  "I'm not going to shoot myself." [Tr. 162].  Dr. Grossman's **DIAGNOSIS**: Axis I - Major Depression vs. Bipolar Disorder, Axis II - No diagnosis, Axis III - Deferred to primary care, Axis IV - Financial, activities limited by pain, Axis V - 45"[6].  **PLAN**: "To be scheduled to be seen by psychiatry for a morning appointment. Psychiatric nurse to contact vet re: appointment and follow-up re: vet's status until seen by psychiatry."

The Plaintiff was seen next morning by Lawrence J. Lewis, M.D., for a psychiatric consultation.  The Plaintiff related he had fatigue, poor appetite with weight loss and was despondent.  He reported insomnia, irritability, anxiety with panic feelings, shortness of breath, suicidal thoughts, chronic back pain, and was discouraged "waiting for roof to fall".  Dr. Lewis

---

[6] The Global Assessment of Functioning (GAF) scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, or unable to care for himself). *Diagnostic and Statistical Manual of Mental Disorders - Fourth Edition* (DSM-IV) 32 (4th ed. 1994). A score between 51 and 60 is defined as moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational or school functioning (e.g., few friends, conflicts with peers or co-workers). *Id*. at 32.

found the Plaintiff to be "alert and oriented but slow and affect flat and depressed". He found him neat and appropriate in attire. He found the Plaintiff to have suicidal thoughts without any intent or plan. "Gives no harm contract." "DIAGNOSIS: Axis one: Major Depression. Axis two: No disorder; Axis three: Back pain secondary to injury and hyper-tension; Axis four: Stressors moderate to severe back pain and unemployment financial. Axis five. PLAN: Increase Effexor to 75 mg. b.i.d. Appt. With Dr. Grossman for group therapy. RTC for supportive therapy and medical management 3 months. Call Clinic or use ER if has crisis. Give gun to mother for safe keeping."

In June of 2004, the Plaintiff met with Dr. Adam Karwatowicz, M.D. a psychiatrist. The Plaintiff reported oversleeping, chronic pain (partially controlled by medicine), poor concentration and no motivation. [Tr. 272-273). In October 2004; the Plaintiff's depression was discussed as being exacerbated by his pain, lack of self esteem and not being able to work. [Tr. 266]. The Plaintiff was re-evaluated on December 30, 2004. Dr. Karwatowicz' diagnosis remained unchanged as to depressive disorder and chronic pain. [Tr. 259].

The regulations, at 20 C.F.R. § 416.920a, require the ALJ to complete a Psychiatric Review Technique Form (PRTF), in evaluating mental impairments at the administrative level. 20 C.F.R. § 416.920a(d)(2), and requires that it be attached to the ALJ's decision. The ALJ determined that the Plaintiff had a severe mental impairment of depression but no PRTF was signed by the ALJ or made a part of the record.

### C.    ALCOHOLISM/DRUG ABUSE

The Plaintiff freely discussed with his physicians that he had used drugs and alcohol in the past. The record shows where alcohol use and a positive cannabis test were documented. [Tr. 141,

173, 272]. It appears that the Plaintiff was self-medicating - either when the medications could not relieve his pain or when he ran out of his pain medications. [Tr. 141]. The record shows that although the Plaintiff was tested and screened for alcohol and illegal substances, the tests were negative. [Tr. 123, 157]. Further, none of the state examining physicians' indicated in their reviews that the Plaintiff had a severe enough alcohol problem that it needed to be taken into consideration. [Tr. 216, 224, 228, 299, 302, 311]. Although the ALJ noted the Plaintiff's history of alcoholism, she concluded that it was not a severe impairment. [Tr. 21, 27, finding no. 4].

### D. VOCATIONAL EXPERT

In step four of the ALJ's analysis, the ALJ found that the Plaintiff was unable to return to any of his past relevant work. During the hearing, the ALJ asked a series of questions to the Vocational Expert ("VE"). The ALJ presented the VE with "a person who has no relevant work experience, that he is left handed and can do light work and can only use his left hand on an occasional basis". [Tr. 364-365]. The VE responded that such an individual "could perform work as a school bus monitor, an usher, or a surveillance monitor". [Tr. 365]. The ALJ preceded to ask about sedentary jobs but the VE responded that most sedentary jobs would be eliminated due to the requirement of bilateral dexterity. [Tr. 366-67]. The VE did testify that the Plaintiff could possible work as a security guard and "a part aide in parts information." [Tr. 368]. The ALJ suggested a job such as telemarketing and the VE stated she would not be comfortable with that type of work for the hypothetical person described. [Tr. 368].

The ALJ added in mental restrictions(although she was not sure about these). In response, the VE replied that the cumulative effect of these restrictions would erode the occupational base. [Tr. 369]. When asked about the need for Plaintiff to have to lie down several times during the

day, the VE responded that, given all the restrictions, it would be difficult to find a job for the Plaintiff. Specifically, she stated, "you know again you're looking for a job that's the needle in the haystack theory." [Tr. 371].

**IV.    CONCLUSION**

In the instant case, the ALJ rejected most of the psychiatric evidence in the record. The ALJ failed to credit the Plaintiff's treating psychological doctors, and even questioned whether Dr. Karwatowicz qualified as such. [Tr. 24]. The Plaintiff would submit that Dr. Karwatowicz was the Plaintiff's treating psychiatrist beginning in June of 2003. Also, Dr. Karwatowicz worked with Dr. Grossman, a psychologist, who had worked with the Plaintiff for an even a longer period of time. [Tr. 159-187, 251, 280, 286].

Dr. Karwatowicz indicated the Plaintiff would have difficulty dealing with work rules, co-workers, the public, work stress and maintaining concentration. He also determined that due to chronic pain and depression the Plaintiff would be unable to work. He diagnosed the Plaintiff with depressive disorder and chronic pain. He never placed the Plaintiff's GAF scores above 50. Dr. Grossman and Dr. Karwatowicz both found that the Plaintiff to have a low GAF score and a "depressive disorder" diagnosis.

Further, Dr. Lewis of the VA, noted the Plaintiff had a depressed mood, slow speech and moderate psychomotor retardation. He listed his diagnosis as depression and gave the Plaintiff a GAF score of 45. [Tr. 163]. Dr. Lewis saw the Plaintiff in June, July and October of 2003. [Tr. 163, 176-178, 188]. The ALJ presented no argument that would discount the opinion of Dr. Lewis.

The ALJ's opinion did not properly analyze the opinions of the Plaintiff's treating physicians pursuant to the Regulations. The ALJ found that the opinions of Drs. Acosta and

Susko and their pain analysis lacked supporting evidence. [Tr. 25]. On January 6, 2003, Dr. Acosta found the Plaintiff to have a left posterolateral disk bulging at L4-5 and the Plaintiff was :receiving epidural steroid injections.   Dr. Susko's notes, indicated lumbar pain at L1-2 and a herniated disc at L5-S1, which were consistent with the opinion of Dr. Acosta.  The medical evidence supports the Plaintiff's allegations of pain and a medical condition capable of producing that level of pain.

The record shows that the ALJ found the Plaintiff could not return to his past relevant work.  Thus the burden of proving that the Plaintiff can perform other work in the national economy shifted to the Commissioner.    The ALJ sought to meet that burden through the use of hypothetical questions to a vocational expert. ]Tr. 362-372].  The case law of the Eleventh Circuit requests that the questions to the VE be accurate.  *Pendley v. Heckler*, 765 F.2d 1561, 1563 (11th Cir. 1985).  The ALJ asked a series of hypothetical questions to the VE.  However, based on the limitations mentioned and not mentioned, it is unclear what job the Plaintiff would be able to perform, if any, in the national economy.

## V.   RECOMMENDATION

For the foregoing reasons, the ALJ's decision is not consistent with the requirements of law and not supported by substantial evidence. Accordingly, pursuant to sentence four of 42 U.S.C. 405(g) and 42 U.S.C. 1383(c)(3), it is **RESPECTFULLY RECOMMENDED** that the decision of the  Commissioner be **REMANDED**  to allow the Commissioner to:

(1)    Conduct an additional  hearing to consult with and elicit testimony from a vocational expert to properly consider the limitations, if any,  of plaintiff  performing light work on a regular and sustained basis and determine  the availability of suitable alternative jobs in the local

and national economy based on the above-mentioned impairments;

(2) to further reconsider the plaintiff's claims in light of the findings of the physicians who treated the plaintiff and to take additional evidence relevant to the plaintiff's impairments, and;

(3) make new findings consistent with this Report and Recommendation

**DONE** and **ENTERED** in Chambers at Fort Myers, Florida, this 12th day of September,

Copies furnished to:

Honorable John E. Steele,
United States District Judge

Susan Roark-Waldron, A.U.S.A.
Jonas H. Kushner, Esquire

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days from the date of its service shall bar an aggrieved party from attaching the factual findings on appeal and a *de novo* determination by a district judge. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72; *see also* Fed.R.Civ.P. 6; M.D. Fla. R. 4.20.